DeVille, Appellant, *v.* DeVille, Appellee.

(No. 4360—Decided May 23, 1949.)

*Mr. Harry B. Kirtland,* for appellant.
*Mr. August M. Streicher,* for appellee.

Fess, J. This is an appeal on questions of law from an order of the Juvenile Court changing custody of three minor children from their mother to their father.

The mother, as plaintiff, obtained a divorce from the father in 1943 and she was awarded custody of the three children. As a part of the decree, the case was certified to the Juvenile Court for further proceedings as to the children. On September 11, 1948, the defendant filed an application for custody of the three children—Virginia, then 17, Robert, 14, and Diane, 11 years of age. In his application, defendant stated that he would return to Japan in the service of the United States government on September 29, 1948, and that the three children had expressed a desire to be under the custody of the defendant. On September 22, 1948, the application was referred to a referee of the Juvenile Court and on motion the father was enjoined from removing the children from the jurisdiction of the court until the matter of custody was decided. Testimony was taken before the referee, the record of which consisted of 199 pages. The hearing was fraught with tears, scandal and bitterness bordering on vituperation. The proceedings before the referee disclose a lack of that judicial composure and restraint comporting with the dignity which should attend a judicial hearing.

In the bill of exceptions, at the conclusion of the hearing before the referee, the following is recited:

"Thereupon all of the evidence was submitted to the court, whereupon the court, being fully advised upon the matters submitted, found the issues joined against the plaintiff and in favor of the defendant, as more fully set forth in the record of this cause and the following memorandum by the court, specifically made a part of the record."

In the memorandum the court found that, the chil-

dren having chosen to live with their father, the mother had failed to prove the father unfit to have their custody, and, therefore, granted his application. The memorandum states also that, because the father was required to leave within 24 hours, custody should be transferred to the father forthwith. It was further ordered that, if such transfer be circumvented by motion for new trial or appeal, the mother should be charged with the cost of transporting the children with a suitable companion, such cost to be covered by a supersedeas bond in the sum of $5,000. Bond for appeal was set at $300.

The journal entry awarding custody of the children to the father and fixing the bonds was not entered until October 6, 1948. No certificate by the referee of his findings and no recommendation as to the order of the court appear in the record.

The record discloses further that no notice was given the parties of the presentation of any findings prior to the entry of the order of the court. These discrepancies are assigned as error, together with a number of other assignments.

Section 1639-21, General Code, provides for the appointment of referees *with the usual power of masters in chancery cases*; that in each case submitted to them they shall hear the testimony and certify to the judge their findings upon the case, together with their recommendation as to the judgment or order to be made in the case; and that "the court, after notice to the parties in the case of the presentation of such findings and recommendation, may make the order recommended by the referee, or any other order in the judgment of the court required by the findings of the referee, or may hear additional testimony, or may set aside said findings and hear the case anew."

In enacting Section 1639-21, General Code, the Gen-

eral Assembly may; have overlooked the distinction between referees and master commissioners made in Sections 11475 to 11486 and 11487 to 11492, General Code. Prior to 1880 it was provided that a reference should be "according to the usages of courts of chancery" and the proceeding was according to rules in equity practice relating to masters. These old rules were cumbersome and technical and in 1880 the quoted phrase was deleted and the words, "appointed by the court for that purpose," were inserted, and since that time proceedings before a master, instead of being according to the uses of chancery, have been regulated by Sections 11487 to 11492.

In employing the phrase, "who shall have the usual power of masters in chancery cases," we do not believe that the General Assembly intended to revert to the ancient powers of masters in chancery but rather intended to confer upon Juvenile Court referees the powers of master commissioners as defined in Sections 11490 and 11491, General Code.

Section 11490 provides that upon a reference a master shall take the testimony in writing, report it to the court, and therewith his conclusions on the law and facts involved in the issues, which report may be excepted to by the parties, and confirmed, modified or set aside by the court. Section 11491 empowers masters to summon and enforce the attendance of witnesses and to grant adjournments, the same as the court. Sections 1685 and 1686 require motions affecting the confirmation, modification or vacation of a report of a referee or master to be determined within 30 days after submission, but this provision has been held to be directory. *James* v. *West, Admr.,* 67 Ohio St., 28, 65 N. E., 156.

It will be noted that a commissioner makes a recommendation to the court for confirmation, modification or vacation. On the other hand, referees conduct a

trial as by the court and must separately state the facts found and conclusions of law. Their decisions must be given, and may be excepted to and reviewed, as in a trial by the court. Their report upon the whole issue shall stand as the decision of the court, and judgment may be entered thereon as if the court had tried the action. Sections 11478 and 11479, General Code. But a referee does not reduce the testimony to writing unless directed to do so by the court. Section 11481, General Code. However, when an action is referred to a master commissioner, he must reduce the testimony to writing and report the same to the court with his conclusions on the law and facts. A case is referred to a referee for trial and to a master commissioner to take testimony. The reference to a master commissioner is ancillary and his report is in aid of the court. See *Brooks* v. *Scobie,* 1 C. C., 348, 1 C. D., 194; *Cairns* v. *Hedges,* 2 C. C., 103, 1 C. D., 387; *James* v. *West,* 67 Ohio St., 28, 65 N. E., 156.

It will be noted that Section 1639-21, General Code, provides that the referee shall hear the testimony and certify his findings to the court, together with his recommendation, which is quite similar to the functions of a master commissioner. We, therefore, hold that the principles applying to master commissioners should likewise apply to Juvenile Court referees.

The motion to change the custody of the children involved a ''special proceeding'' and as to the parents affected a substantial right—the custody of the children. *In re Anteau,* 67 Ohio App., 117, 36 N. E. (2d); 47. The parties were entitled to have the referee certify his findings and recommendation to the court in writing. They were likewise entitled to notice in writing of the presentation of such findings and recommendation and to the right to file exceptions thereto and to a hearing by the court thereon prior to the en-

try by the court of any order upon the motion. In *Mennel Milling Co.* v. *Slosser,* 140 Ohio St., 445, 45 N. E. (2d), 306, the Supreme Court affirmed a judgment of this court holding that a court is required to consider exceptions and motions duly filed with it for the purpose of objecting to the report of a referee. This principle applies with even greater force to the report of a referee having the powers of a master commissioner. Cf. *In re Hobson* (Ohio App.), 62 N. E. (2d), 510.

The mother, having been originally awarded the custody of the children, was entitled to retain such custody until a lawful order duly entered by journal entry was made changing such custody. From an order adverse to her right to retain custody, she had a right to appeal to this court. But, she having taken an appeal on questions of law only, the trial court's order stands until reversed and plaintiff might be subject to an order of that court directing her to deliver the children to the defendant. In order to avoid that contingency, she might be required to give a supersedeas bond.

The conditions of a supersedeas bond are to the effect that a party appealing shall abide by and perform the order and judgment of the appellate court and pay all money, costs and damages which may be required of or awarded against him upon the final determination of the appeal and are *such other conditions as the court may provide.* Section 12223-14, General Code. We do not believe that the italicized phrase should be interpreted to permit a trial court to prescribe any conditions which it may feel should be imposed as a deterrent to an appeal. The other conditions referred to in Section 12223-14, General Code, are such as might reasonably be deemed necessary and appropriate to secure and enforce compliance with a judgment or other order of the court. In the instant case, plaintiff, by the order of the court as finally en-

tered, lost her right to retain custody of her children, but no·monetary consideration involving damages to the defendant was involved. It may have been imperative that the defendant return to Japan immediately, but the inconvenience and expense which may have been encountered in having the children travel alone to Japan do not warrant imposing a condition on the plaintiff that she pay such expense, including that of a suitable companion. Upon any further proceeding as to the fitness of the father to have custody of the children, as an element of fitness, consideration should be given to determining whether the father is able to support the children and the expense of their travel to Japan. This may or may not be a moot question, since we are advised in the argument that the day following the announcement of the court's decision the father and children departed for Japan.

Since the proper procedural steps were not taken below to permit this court to pass upon other errors assigned, the order of the court is reversed and the cause remanded for further proceedings, including the certifying by the referee of his findings and recommendation, the notice to the parties of the presentation thereof, and the hearings of exceptions, if any, to such proceedings. *Mennel Milling Co.* v. *Slosser,* unreported, Court of Appeals for the Sixth Appellate District.

The reversal, as of course, vacates the order below, including that portion fixing the bonds.

*Judgment reversed and cause remanded.*

Conn and Carpenter, JJ., concur.